Did I pronounce that correctly? And for the appellant, Mr. Mueller, and for the appellee, Mr. Spooner, you may proceed. Thank you, Judge. Alan Mueller, representing Louis Angeli. I don't really want to cover what I already covered in my brief, nor do you probably want to hear the same arguments. But the court had sent us a note suggesting you wanted us to address the issue of jurisdiction, so I thought I'd spend a minute talking about that. Now, the note from the clerk didn't indicate exactly what about jurisdiction, but I'm assuming the court had concerns about whether you can hear the appeal, whether it was properly brought, or as to whether it was an appeal proper under 303 or 304A. Just briefly, the original action here was brought as a declaratory judgment action brought against Barbara Angeli, who was the policyholder, and her son, who was driving her vehicle and injured in an automobile accident. It was a claim under the uninsured portion of the policy. So the plaintiffs filed a declaratory judgment action naming the policyholder as well as her son, the injured party, in the action. So when the original matter came before Judge Schmidt on a summary judgment motion brought by the plaintiff, that declaratory judgment action, in the first instance, the record will reflect that the summons was served on Louis Angeli. There was never any service effect on Barbara Angeli. Was she already dead at the time of the filing? Yes, she was. So it would be hard to get service on her. Yes, and so what would normally happen then, having discovered later, and what I think the court's cases have suggested, and I think Justice Lund 20 plus years ago had suggested, well, once a party, a plaintiff, determines that one of the parties that they are suing is deceased, they should move to appoint a special representative and then move to amend their complaint to name the special representative of the estate on behalf of the decedent. I think it's very clear that the decedent does have an interest. It's a contractual matter. It does survive under the probate code. And that would be the normal course of things. That wasn't done, so when the summary judgment motion was filed, and I think counsel's brief mentions that the same day they filed their motion for summary judgment in the Sangamon County was the day that they learned that Barbara Angeli had passed away. However, after that, there was no effort made by them to either appoint a special representative or amend their complaint to name the estate. I think you have to get the special representative named first. So when the matter proceeded on the summary judgment motion before Judge Schmidt, the only person named in the summary judgment motion was Louis Angeli. Judge Schmidt, obviously, as you know, ruled in favor of the plaintiff on the cross-summary judgment motion. At that point, we have probably a final decision as to Louis Angeli. However, we don't have a final decision disposing of the whole case because we have another party to the case, Barbara Angeli, who's never been served. We know now she's deceased, but there is a procedure by which they can bring her in. At that point, had we appealed from that original summary judgment decision or order of Judge Schmidt, I think we would have probably gotten bounced by you folks because that would have been interlocutory. Rule 304, well, the case law is quite clear that a final judgment is secure than all parties, is interlocutory, and cannot be appealed without an express finding by the court under 304A that there's no reason for that part of the case not to go up. So time passed, and eventually my predecessor in the file filed that motion to try to get the court to, in effect, certify it. Perhaps not the right word for it, but to get the matter into posture so we could appeal on the summary judgment issue, whether the order was correct, whether Judge Schmidt's interlocutory policy was correct. Judge Schmidt denied our motion. There's no reasoning in his docket order as to why he denied it, so some additional time passed. We then tried, even though I'm not sure in the normal course of things it's our responsibility to get a special representative named, but we tried to do that, which plaintiffs probably should have done upon learning that Barbara Angeli had passed away, and Judge Schmidt denied that. Again, his docket order at that point doesn't indicate what, he just denies it. And there's essentially a bystander's statement by Mr. Simmons, who was counsel at that time, indicating, and I'm sure Mr. Spinner will agree with that, that Judge Schmidt indicated in open court that he felt all matters had been determined as to all parties, nothing left for the court to rule on, meaning he didn't feel that Barbara Angeli had any rights that were still capable of being adjudicated. And at that point, we appealed it, because in the court's mind, it's a final decision at that point. So I guess now the question is if the court is concerned that we're still not properly here because there was never any decision as to Barbara Angeli, there was never any 304A finding that this part of the case should go up, I guess I'd ask the court if we were to go back down and adjudicate whatever rights Barbara Angeli may have, or get a special representative, have them adjudicate whatever additional rights she may have under the policy of which she is the policy owner, we're going to end up back here in the same issue, which is whether Judge Schmidt's original summary judgment decision or order relative to that was correct or not, meaning is the policy as clear-cut as plaintiff would have us believe, or were the letters of correspondence between then-counsel for Louis Angeli and State Farm sufficient to invoke the arbitration provisions in the uninsured motorist policy. So with that, the court doesn't have any questions, as they say. The arguments in the policy, I will say, let me add one thing. As I was looking through this yesterday, there were a couple of cases that I ran across that weren't cited in the briefs. I don't know if you want me to mention those, and I apologize, but one was decided actually after we briefed this, and it was a first district case, and it was member select versus Luz, L-U-Z, Luz, and it also involved interpretation of an uninsured motorist provision and what was necessary in order to invoke the arbitration clause within that. It was decided in March of this year, fourth division of the first district. But otherwise, I think that our brief pretty much sets forth the arguments we have regarding the policy language and the difference between the policy language in our case and the Ryan and Bucallo cases which are cited by plaintiffs in their brief. And I took a close look at that. And actually, the court and member select took a very close look at that. So I don't think it's any different than anything the court has seen before, but perhaps a good look at it in spite of the first district, which had, if memory serves, decided the Ryan case and or the Bucallo case. So a fresher look by them at the same issues. You know, if these policies were written clearly, we wouldn't see as many cases coming up before you folks as we do. It would be pretty simple to write into these policies, if you want to, one arbitration, here's the form you need to fill out and you need to do it by this date. Here's the magical language you need to use. But there's nothing in these policies that does that. So anyway, any questions? I don't see any. Okay, thank you. Thank you. Mr. Spooner. May it please the court, counsel, your honors, my name is Scott Spooner. I represent the plaintiff aptly in this matter, State Farm Insurance Companies. I'm going to start by addressing the jurisdictional issue, and I'd like to begin by indicating with respect that I do not believe this court has jurisdiction to review this matter. The record confirms that on January 9th of 2014, State Farm filed its motion for summary judgment. And in that motion, it announced in a footnote on the first page of its motion that it had, its representative had learned that Barbara Angeli had died back on January 9th of 2013 or 2014, 2013, excuse me. So she had died before the complaint for declaratory relief was filed in the cert court of Sagamon County. I will candidly acknowledge that I looked into whether or not I had an obligation to file a suggestion of death. And to do that, I consulted Section 2-1008B2 of the Illinois Code of Civil Procedure. And my reading of that provision brought me to the conclusion that there was a major qualification that barred my filing a suggestion of death. To quote from that provision of our state's Code of Civil Procedure, it provides that if a person against whom an action has been brought dies and the cause of action survives and is not otherwise barred, his or her personal representative shall be substituted as a party. When I then researched the Survival Act and cases that have interpreted that statute, I didn't find any indication that an action for declaratory judgment was an action which survives. An argument has been set forth in my opponent's brief that this is an action for breach of contract. I disagree. Remedies for breach of contract are money damages and in some cases, we're simply seeking an interpretation, a declaration of one party's rights under an insurance contract. And again, by my reading of the statute and especially of the case law, for instance, I say the Reynolds and the Kleinworth cases, attempts to expand the Survival Act to include, for instance, punitive damages have been barred by decisional authorities on the ground that it's the responsibility of our state's General Assembly to make those sort of expansions and that they do not automatically arise simply because that's an additional remedy that's been sought by one litigant versus another. In any event, the record reveals that summary judgment was granted by the lower court on February 27 of 2014. Notably, there was no reaction to that dispositive relief from the defendants in this case or the defendant, Mr. Angeli. He did not seek reconsideration of Judge Schmidt's ruling. And more important, there was apparently no concern on the part of Barbara Angeli's representatives that an estate be opened so that her rights could be adjudicated in the context of the declaratory judgment action. In fact, the record further confirms that counsel for Mr. Angeli waited until September 23 of 2014 to file a motion under Supreme Court Rule 304A and that that motion was denied on February 9 of 2015. Now, the reason I mention this latter date is because in my reading of the Supreme Court rules, 303A and Rule 274, that triggered the time at which the defendants were required to file their statutorily compliant notice of appeal. In other words, their notice of appeal would have been in consequence of the court's denial of the 304A filing. I'm being generous here. I'm trying to be accommodating. But they had 30 days from Judge Schmidt's ruling on February 9 of 2015. In other words, until March 11 of 2015 to file their notice of appeal. Instead of doing that, they waited another three months. And this time they finally woke up and decided, well, if we want to adjudicate Barbara Angeli's rights, I don't know why they would want to do that, but they decided we'll petition the trial court for the opening or the appointment of a special representative. That, too, was denied. But what's important in this context of the jurisdictional argument is that neither the ruling which denied the 304A finding or the request for a 304A finding or the request for appointment of a special representative modified in any way, shape, or form the order of summary judgment that was granted on February 27 of 2014. So what I want to emphasize to this court is that that was a final order in my book on February 27 of 2014. When the defendants came before Judge Schmidt and argued for a 304A finding, if he had modified his original ruling, that would have triggered a new 30-day period in which to file a notice of appeal. Instead, they waited another 90-plus days and then sought a different form of relief, and only after that was denied did they file their notice of appeal. So again, for all of these reasons, and as I set forth with greater clarity in my brief and in the motion to dismiss this appeal that I filed before briefing these matters, I don't believe this court has jurisdiction to hear this matter. Nevertheless, I'll address, hopefully in an abbreviated form, the underlying facts. You filed a motion to dismiss this appeal? Yes, I did. When did you do that? I did that on September 15 of 2015. I have a copy of my motion if you'd like to review it. Okay, go ahead. The facts in the underlying case are, if anything, even more clear-cut than this jurisdictional issue. Here we have a motor vehicle accident with a permissive user of a vehicle parked by, among others, Barbara Angeli on June 2 of 2010. The driver of that vehicle, and I think his wife or daughter, some of the family relationships here have been muddled to say the least, filed an action against the tortfeasor in the circuit court of Sagamon County. They learned that the tortfeasor was evidently under or uninsured, and then correspondence began between counsel for the Angelis and State Farm. But notably, there is no correspondence which contains the words request, demand, or arbitration. That simply doesn't appear in any of the letters that passed between State Farm and counsel for the Angelis at any time during that critical two-year period between June 2 of 2010 and June 2 of 2012. What they make reference to is, we're thinking about filing an underinsured or an uninsured motorist claim. Please advise as to what we are required to do to perfect that. I think that's actually more than what was set forth in any of these letters. All of which, I would point out, were admitted as authentic and the sum total of all communications between counsel for the Angelis and State Farm during the two-year period. I would also ask the court to note that it was not until State Farm filed its complaint for declaratory judgment that all of these issues arose afresh. In other words, it was more than a year after the two-year period under the policy had expired that there was any kind of reaction to this issue of whether or not arbitration had been properly sought. Now, at that point, it was too late. This court in the Parrish decision, the First District and the Rhine decision, and several other sister courts have ruled consistently that these two-year limitation periods for underinsured and uninsured motorist provisions are enforceable. That they are a proper limitation upon the time at which to perfect the claim for underinsured and uninsured motorist coverage or benefits. In fact, the Rhine case held, and I'll quote here, for an insurance letter to commence the arbitration process, it must satisfy the express terms of the limitations provision of the insurance contract. There was no mystery and certainly no ambiguity, that was the opinion of Judge Schmidt, that as to what it was required to initiate a claim for uninsured motorist benefits, the pertinent policy provision is quoted in the complaint for declaratory judgment and the motion for summary judgment and set forth in the brief that I've submitted to this court. And the pertinent clauses provide as follows, and again I'm quoting, under the uninsured motor vehicle coverages, any arbitration or suit against us, meaning State Farm, will be barred unless commenced within two years after the date of the accident. There is no right of action against us, State Farm, until all the terms of this policy have been met and unless such action is commenced within two years after the date of the accident. Again, I can't think of any contractual provision that could be more clear-cut incumbent upon the insured party, in this case Louis Angeli and I guess potentially his mother and father as the policy holders, to make a request for arbitration and to read the policy more closely to name their arbitrator and to do so on or before June 2 of 2012. That wasn't done and for that reason I believe Judge Schmidt was correct in his ruling where he found no ambiguity in the insurance contract and in the summary judgment in favor of State Farm. And I would ask this court to affirm. One question, Mr. Spooner, going back to the motion to dismiss, you said you filed in September of 2015? Yes. What was the basis of that motion? The argument that I just recited that there was a ruling, a dispositive ruling, in February 27 of 2014 that was followed, I think, nine months later or seven months later by this request for relief under Supreme Court Rule 304A that looking at it in a light most generous to... Was it based on a motion to dismiss because we didn't have jurisdiction? Yes. Okay, I just wanted to check. Yeah, September 15 of 2015. Do we have to answer any questions from the court? There don't appear to be any. Thank you. Thank you, Judge. Mr. Malone. Briefly, Your Honors. The policy itself, I think it's in the record, it's at C-17 as a paragraph regarding how one, I guess it sort of describes how one commences an arbitration. I'm not sure it's as clear as counsel suggests. I agree the two-year limitation period is very clear within the policy. But all it says is upon the insured requesting arbitration. It doesn't tell us how to do it, what kind of language we need to use. Say we have to use the word arbitration. We have to use the word demand. Some of the policies in Rhine, I think it was Bicolo actually, you have to demand arbitration and you have to name an arbitrator. This policy doesn't say that. It says within 45 days of the request for arbitration, each party shall select an arbitrator and those arbitrators shall select a third. Then it has another provision that says in the event no arbitrators are selected, which means selecting an arbitrator is not mandatory. There's a case, again, not cited in my brief because I didn't find it until looking through this yesterday with respect to your jurisdiction questions. Menneken, which is cited I think in 2001, which addressed this very sort of language, if memory serves. Actually, the other case I mentioned that came down in March does as well. If it says, if you don't name it, then mean your case is barred if you don't name an arbitrator because then you get pushed over and you go in front of the American Arbitration Association. This is a different policy than the one in the case cited by counsel. Do off cases involving a claim for UIM have to go to arbitration? Or could State Farm take a look at the situation and decide to pay out under the UIM without arbitration? Well, it's an interesting dynamic because you have two years from the injury, of course, to file a personal injury action, which was done. Oftentimes, you don't know whether they're uninsured or an underinsured. You aren't going to know. Underinsured, you're not going to know until you resolve the case with the uninsured party or determine they have low limits that you're going to have a claim. So the underlying case could go on for several years beyond the two years. Now, the policies, though, require that you request arbitration. So, you know, I think the more common practice is even though you may not ultimately need to pursue an uninsured claim, you say, well, we request arbitration if the policy says you have to name an arbitrator and we name, you know, Joe Smith as our arbitrator. And then you follow it with, but since the underlying case is going on, let's hold it in abeyance until we figure out, you know, the extent of the coverage and those matters. So as far as whether the action survives, I think it's clear from the probate code that Barbara Angelli's action does not abate with her, well, her interest does not abate with her debt. You know, she didn't file a declaratory judgment. The declaratory judgment action is simply an action to interpret the contract between the parties. The contract action clearly under the probate code survives. So I don't think the court should have any concerns about that. So that's all I have unless there are other questions. Okay, thank you. Thank you. We'll stand in recess until the readiness of the next hearing.